DeAnne Casperson, Esq. (ISB No. 6698)
dcasperson@workandwage.com
Amanda E. Ulrich, Esq. (ISB No. 7986)
aulrich@workandwage.com
Ryan S. Dustin, Esq. (ISB No. 8683)
rdustin@workandwage.com
CASPERSON ULRICH DUSTIN PLLC
356 W. Sunnyside Rd., Suite B
Idaho Falls, ID 83402
Telephone: (208) 524-0566
Facsimile: (208) 745-2523

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
IN THE DISTRICT OF IDAHO

| | |
|---|---|
| JANIEL CARTER,<br><br>    Plaintiff,<br><br>v.<br><br>CONVERGYS CUSTOMER MANAGEMENT GROUP, INC. an Ohio corporation,<br><br>    Defendant. | Case No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Filing Fee: $400.00 |

Plaintiff, Janiel Carter, by and through her counsel of record, Casperson Ulrich Dustin PLLC, and as a cause of action against Defendant Convergys Customer Management Group, Inc., complains and alleges as follows:

## JURISDICTION AND VENUE

1. This is an action brought under the Americans with Disabilities Act Amendments Act ("ADAAA"), 42 U.S.C. § 12101, *et seq.*; and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq*.

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367; 42 U.S.C. § 12117; and 29 U.S.C. § 2617.

1 - COMPLAINT AND DEMAND FOR JURY TRIAL

3. Venue in this action properly lies in the United States District Court for the District of Idaho, Eastern Division, pursuant to 28 U.S.C. § 1391(b) because the claims arose, in this judicial district; and venue also properly lies in this district pursuant to 42 U.S.C. § 12117 and 29 U.S.C. § 2617 because the unlawful employment practices were committed in this judicial district.

## PARTIES

4. Plaintiff Janiel Carter ("Plaintiff") is a female citizen and resident of the United States of America, who is, and was at all times relevant to the Complaint, a resident of Bannock County, Idaho.

5. Defendant Convergys Customer Management Group, Inc. ("Convergys") is an Ohio corporation, a wholly owned subsidiary of Convergys Corporation, with locations throughout the United States.

6. At all times relevant to this Complaint, Convergys regularly employed fifteen or more persons whose services were performed in the State of Idaho and was engaged in an industry affecting commerce. Consequently, Convergys' conduct is properly regulated by 42 U.S.C. § 12101, *et seq.*; and 29 U.S.C. § 2601, *et seq.*

## FACTS COMMON TO ALL COUNTS

7. Plaintiff realleges and incorporates by reference paragraphs 1 through 6 as though fully set forth herein.

8. Plaintiff began working for Convergys April of 2004 as a Technical Support Associate III at Convergys' Pocatello, Idaho location.

9. At all times relevant to the Complaint Plaintiff performed her work satisfactorily.

10. Plaintiff suffers from osteoarthritis. Plaintiff also suffers from neuropathy.

11. Because of her disabilities, Plaintiff needs weekly physical therapy. As a result, Plaintiff has applied for and used intermittently Family Medical Leave Act ("FMLA") leave for time away from work for physical therapy and doctor appointments.

12. Defendant had always granted Plaintiff FMLA, but her direct supervisors at times have found Plaintiff's use of FMLA time a bother for purposes of scheduling and work assignments.

13. On or about March 10, 2017, Plaintiff spoke with Dennis Rinehart, Director of Facilities, and requested a desk riser due to significant pain caused by sitting for long periods of time because of the osteoarthritis in Plaintiff's spine. Plaintiff's doctor had directed Plaintiff to change her position at work frequently due to her disabilities.

14. Mr. Rinehart told Plaintiff that a desk riser was too costly. Also, that it was too difficult because installation would involve modification of two existing desks.

15. Plaintiff had asked multiple times for a desk riser and even offered to purchase her own desk riser but was told she could not do so. Other employees were allowed to have a desk riser.

16. Over the course of several years, Plaintiff had applied for numerous jobs within Convergys all of which were denied. Plaintiff believes her FMLA and related disabilities were used to exclude her from those positions.

17. On or about March 11, 2017, Plaintiff was at her desk with a few of her co-workers when she activated a child's costume toy flashlight which looks like and mimics the sound of a taser.

18. Plaintiff had purchased it because the offices are in a bad part of town, she works late, and thought it could be a deterrent, as well as a small flashlight that would fit in her purse. The toy packaging indicated it was for children 3+ years old.

19. Plaintiff had meant to push the flashlight button on the toy but inadvertently pushed the taser sound button. However, it only sounded like a taser and the toy does not have any ability to shock or project anything other than light.

20. A short time later, Cody Perry, Team Lead, came down the isle and said he heard something make an electrical sound. When he asked about it, Plaintiff was on the telephone. Plaintiff later told Mr. Perry she had a toy flashlight in her possession. Mr. Perry then said he saw Plaintiff using a taser at her desk. Plaintiff explained to Mr. Perry she was not using a taser nor did she have a taser in her possession. She only had a toy flashlight which mimics the sound of a taser. Mr. Perry told Plaintiff that it could be considered a weapon and she needed to put it in her car. Plaintiff again explained to Mr. Perry that it was not a weapon but in fact a toy flashlight and offered to show it to him. Mr. Perry refused to look at the toy flashlight, insisted it was a weapon, and Plaintiff needed to put it in her car. Plaintiff complied and put the toy in her car and finished her shift.

21. On or about March 14, 2017, Plaintiff returned to work after her scheduled two days off. A few hours into her shift Plaintiff was told she needed to talk with Travis Standley, HR Business Partner, about the toy flashlight.

22. Mr. Standley said it had been reported to him that Plaintiff had discharged a taser at work. Plaintiff explained to Mr. Standley that is was a toy and not a taser, which mimics the sound of a taser, and offered to show it to him. Mr. Standley refused to look at it. Plaintiff explained that she carried a small knife for cutting fruit and small sewing scissors in her purse because she did not want further allegations of having a weapon, and Mr. Standley indicated those items were okay. Mr. Standley told Plaintiff she was only going to be written up for the incident.

23. Plaintiff returned to work and at approximately 3:30 p.m. that afternoon received an instant message instructing her to return to Mr. Standley's office. Mr. Standley was in his office with the Eric Clark, Operations Manager. Mr. Standley and Mr. Clark said the incident had been sent to Corporate Security and it had been decided to terminate her employment for misconduct for using a taser at work. Although Plaintiff tried over and over to explain that the flashlight was a toy, they would not listen or inspect the toy that was still in her car, as well as the packaging.

24. After nearly 13 years and at age 52 years old, Plaintiff was discharged for having a toy in her purse.

## COUNT ONE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT
**(Failure to Accommodate)**

25. Plaintiff realleges and incorporates by reference paragraphs 1 through 24 as though fully set forth herein.

26. Plaintiff was disabled within the meaning of the ADAAA.

27. Plaintiff's disabilities substantially limited her major life activities and/or major bodily functions, including her ability to move, stand, sit, walk and other musculoskeletal movements.

28. Plaintiff's disabilities required that Plaintiff be accommodated by intermittent FMLA leave and with the ability to change positions at work.

29. Plaintiff was a qualified individual able to perform the essential functions of her job with or without reasonable accommodations.

30. Convergys failed to accommodate Plaintiff by refusing to allow Plaintiff a desk riser or the ability to bring her own desk riser to work.

31. Convergys failed to accommodate Plaintiff by terminating her employment.

32. Convergys failed to offer any explanation as to why Convergys could not accommodate Plaintiff other than it was too expensive and that Plaintiff could not bring her own desk riser.

33. Convergys took adverse action against Plaintiff by refusing to allow Plaintiff a desk riser, terminating Plaintiff's employment based on unfounded allegations, and failing to engage in the interactive process with Plaintiff.

34. As a direct and proximate result of Convergys' actions and/or failures to act, Plaintiff has suffered, and will continue to suffer, a loss of earnings, employment benefits, and job-related opportunities. Plaintiff is therefore entitled to general and compensatory damages, in an amount to be proven at trial, as well as any other equitable remedies available to her, including reinstatement.

## COUNT TWO
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT
### (Disability Discrimination)

35. Plaintiff realleges and incorporates by reference paragraphs 1 through 34 as though fully set forth herein.

36. At all times relevant hereto, Plaintiff had disabilities as defined by the ADAAA.

37. Plaintiff was a qualified individual under the ADAAA, i.e., an individual who, with or without reasonable accommodation could perform the essential functions of her job.

38. Convergys took adverse action against Plaintiff based upon her disabilities including refusing to allow Plaintiff a desk riser and terminating Plaintiff's employment for baseless reasons.

39. As a direct and proximate result of Convergys' actions and/or failures to act, Plaintiff has suffered, and will continue to suffer, a loss of earnings, employment benefits, and job-related opportunities. Plaintiff is therefore entitled to general and compensatory damages, in an

amount to be proven at trial, as well as any other equitable remedies available to her, including reinstatement.

**COUNT THREE**
**VIOLATION OF THE FAMILY MEDICAL LEAVE ACT**
**(Retaliation and Interference)**

40. Plaintiff realleges and incorporates by reference paragraphs 1 through 39 as though fully set forth herein.

41. Plaintiff availed herself of a protected right under the FMLA by qualifying for and taking FMLA leave.

42. Convergys terminated Plaintiff's employment as a result of Plaintiff taking and requesting intermittent FMLA leave.

43. Convergys interfered with Plaintiff's rights under the FMLA by terminating her employment.

44. Convergys' termination of Plaintiff's employment occurred under circumstances raising a reasonable inference or showing direct evidence that Convergys terminated Plaintiff's employment due to her exercise of FMLA rights or to interfere with her FMLA rights.

45. As a direct and proximate result of Convergys' actions and/or failures to act, Plaintiff has suffered, and will continue to suffer, a loss of earnings, employment benefits, and job opportunities. Plaintiff is therefore entitled to damages in an amount to be proven at trial, as wells as any equitable remedies available to her, including reinstatement.

46. Convergys' actions and/or failure to act were in bad faith for which Plaintiff is entitled to liquidated damages pursuant to 29 U.S.C. § 2617(a)(1).

**ATTORNEY'S FEES**

47. As a further direct and proximate result of Convergys' actions and/or failure to act, Plaintiff has been compelled to retain the services of counsel, and have incurred and will continue to

incur costs and attorney's fees. Plaintiff is therefore entitled to attorney's fees and costs incurred in pursuing this action pursuant to 29 U.S.C. § 2617(a)(3) and 42 U.S.C. § 2000e-5(k).

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury as to all issues triable to a jury in this action.

## PRAYER FOR RELIEF

Plaintiff seeks the judgment of the Court against Convergys as follows:

1. For general and compensatory damages, and all other statutorily available damages, in an amount to be proven at trial;

2. For any equitable remedies available to her, including reinstatement;

3. For statutorily available costs and attorney's fees;

4. For prejudgment interest on all amounts claimed; and

6. For such other and further relief as the Court deems just and proper.

DATED this 15th day January, 2019.

        /s/
DeAnne Casperson, Esq.
CASPERSON ULRICH DUSTIN PLLC

C:\Users\Dana\Casperson Ulrich Dustin PLLC\Casperson Ulrich Dustin PLLC Team Site - Documents\DC\19672 Carter\Pleadings\Complaint.Rev1.wpd